IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RYAN PRUITT,

                Plaintiff,                OPINION AND ORDER

    v.

                                      19-cv-557-wmc

BRIAN MENDENHALL,
and TERRIE VAN-WARD,

                Defendants.

---

      Plaintiff Ryan Pruitt, who is currently incarcerated at Waupun Correctional Institution ("Waupun"), is representing himself in this lawsuit against Advanced Practice Nurse Prescriber ("APNP") Terrie Van-Ward and Dr. Brian Mendenhall.  Specifically, Pruitt claims that Van-Ward and Mendenhall ignored the risk that he would harm himself and failed to discontinue his venlafaxine prescription.  The court previously granted Pruitt leave to proceed against these defendants on Eighth Amendment deliberate indifference claims.  (Dkt. #8.)  Defendants have each moved for summary judgment.  (Dkt. #33 and Dkt. #39.)  Because the evidence at summary judgment would not permit a reasonable trier-of-fact to find that defendants Van-Ward and Mendenhall were deliberately indifferent to the risk of Pruitt committing suicide, the court will grant defendants' motions.

UNDISPUTED FACTS[1]

A. **The Parties**

Pruitt was incarcerated at Waupun at all times relevant to this lawsuit. Defendant Dr. Mendenhall, a psychiatrist, began working at Waupun as an independent contractor on April 1, 2018. In this role, Dr. Mendenhall was not involved in selecting the patients that he treated, did not supervise Waupun staff, and was not responsible for scheduling patient appointments. (Mendenhall Decl. (dkt. #43) ¶¶ 5-6.) Van-Ward was an APNP who provided psychiatric care at Waupun during the relevant period before quitting on April 12, 2018.

B. **Pruitt's Mental Health Troubles**

Pruitt has "generalized anxiety disorder" and "unspecified depression." (Van-Ward Ex. A (dkt. #36-1) 2.) In September 2017, Pruitt reported at a psychiatry appointment that he had not been taking his psychiatric medication for two months because it made him fatigued. He also reported feelings of anxiety, depression and insomnia since age 13,

---

[1] Unless otherwise noted, the following facts are undisputed when viewed in a light most favorable to Pruitt. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence submitted in support. In particular, the court has accepted Pruitt's factual assertions in his response to defendants' proposed findings of fact and his own proposed findings of fact signed under penalty of perjury (dkt. #66 and dkt. #67), as long as his assertions may reasonably be within his personal knowledge or supported by a reasonable inference. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (accepting that a verified complaint "is also the equivalent of an affidavit for purposes of summary judgment"). Finally, Pruitt objects to several of defendants' proposed findings of fact, but many of his responses cite to no specific, contrary evidence. Those objections are overruled unless otherwise noted. *See Proc. to be Followed on Mot. For Summ. Judg.*, § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation).

but denied having any current suicidal ideation. In response, the psychiatrist discontinued Pruitt's prescriptions and prescribed him a different psychiatric medication -- citalopram.

At his February 27, 2018, psychiatric appointment with APNP Van-Ward, Pruitt reported that he was having thoughts about the murder of his child, suicidal thoughts, and trouble concentrating. He also reported that the dosage of citalopram was ineffective, but he refused to try a different dosage and requested a new medication. In response, APNP Van-Ward discontinued his citalopram prescription and prescribed him venlafaxine, while warning Pruitt that venlafaxine could possibly increase suicidal ideation and posed a risk of addiction.

On April 1, 2018, Pruitt submitted a health service request ("HSR") to see a psychiatrist stating that he was depressed and having suicidal thoughts, although he did not mention any issues with his medication in the HSR itself. (Mendenhall Ex. A (dkt. #42-1) 14.) The request was referred to a psychiatrist on April 2. (*Id.*) That same day, a doctor with the psychological services unit at Waupun placed Pruitt under 24/7 observation to ensure his safety and stability. Records from Pruitt's observation show that he reported his new medication "messed him up," but he was now "feeling good." (Mendenhall Ex. B (dkt. #42-2) 13.)

Pruitt was released from observation on April 4. Later that day, however, he submitted another HSR, this time stating, "I just spent two days on [observation.] I need to be taken off of this medication and given something different[.] I haven't had the urge to actually go through with suicide for a long time[.] I've been really fighting since I've

3

been taking these new meds and I can't sleep[.] Please see me A.S.A.P." (Mendenhall Ex. A (dkt. #42-1) 15.)

On April 5, a different "psychological supervisor" saw Pruitt for a one-day, follow-up appointment after his release from observation. (Mendenhall Ex. B (dkt. #42-2) 22.) The notes from that appointment indicated that Pruitt reported that he was "alright" and denied current suicidal ideation. (*Id.*) Dr. Mendenhall was not at Waupun from April 2 through 5 because he was attending an orientation program in Madison. (Mendenhall Decl. (dkt. #43) ¶ 16.) As a result, he neither treated patients nor responded to HSRs on those dates. (*Id.*)

On April 6, the health services unit received Pruitt's April 4 HSR, which was triaged and routed to psychiatry (and ultimately, APNP Van-Ward). (Mendenhall Ex. A (dkt #42-1) 15.) On April 8, Pruitt submitted another HSR, stating that he needed to be seen for ankle and back pain, but did not mention that he was experiencing suicidal thoughts. He later refused a nurse call for the April 8 HSR. On April 9, Pruitt submitted yet another HSR, stating that he needed "to be seen as soon as possible about my meds[.] I am having a horrible reaction to them[.] I should not be waiting a month or two to be seen this is very urgent." (*Id.* at 17.) This April 9 HSR was referred for a nursing sick call. (*Id.*)

On April 10, APNP Van-Ward responded to Pruitt's April 4 HSR, stating that she had asked for Pruitt to be placed on her schedule, although another nurse saw him that next day, April 11, in response to his April 9 HSR. (*Id.* at 9, 16.) That nurse's notes further reflect that Pruitt "had suicidal thoughts and was placed into observation [earlier in April]." (*Id.* at 9.) Pruitt reported that his depression worsened while he was taking

4

venlafaxine, and he stopped taking it once he was under observation in April. (*Id.*) The nurse added that he denied thoughts of harming himself, but he was still depressed.[2] (*Id.*) The nurse noted that his medication reaction had "essentially resolved," but the nurse still recommended psychiatry follow up. (*Id.* at 10.)

Later that day, Pruitt saw a clinician from the psychological services unit for a one-week, follow-up appointment after his release from observation. (Mendenhall Ex. B (dkt. #42-2) 21.) The clinician's notes also stated that Pruitt reported his doing "ok," but expressing frustration that he had been seen by a nurse at his appointment earlier that day, instead of a psychiatrist. (*Id.*) He also denied current suicide and self-harm ideation, plan and intent. (*Id.*) Neither the nurse nor the clinician who saw Pruitt on April 11 would have had the authority to discontinue his venlafaxine prescription, even if he stopped taking it.

On April 14, Pruitt was found unresponsive in his cell and transported to Waupun Hospital. (Mendenhall Ex. C (dkt. #42-3) 2.) At the hospital, Pruitt reported that he ingested unknown pills to get high, although the doctors concluded that he had attempted suicide by overdosing on pills. (*Id.* at 5.) Pruitt later reported that he had been put on

---

[2] Pruitt cites to the nurse's notes for the proposition that he reported to that nurse his *current* suicidal ideation. (Dkt. #67, at 5.) He adds that the nurse falsified the notes by reporting that his medication issue had resolved, when he actually told the nurse about his current depression and suicidal ideation. The nurse's notes do not include Pruitt reporting that he was currently suicidal, although he did report ongoing depression. Pruitt also contends that the nurse improperly allowed him to return to his cell after he reported suicidal ideation, (dkt. #65, at 6), but he did not raise that claim in his complaint, and the court did not grant him leave to proceed against that nurse. (Dkt. #1 and Dkt. #8.) Accordingly, he cannot pursue that claim now at summary judgment. Moreover, there is no evidence that either defendant had reason to disbelieve the nurse's notes.

venlafaxine about a month earlier but believed that the medication was causing suicidal thoughts.

Waupun Hospital discharged Pruitt on April 16, and his discharge orders included a continuation of venlafaxine. Upon his return to Waupun, Pruitt was assigned to observation and was regularly seen and assessed by clinicians from the psychological services unit. He also requested a refill of venlafaxine on April 18. Nevertheless, on April 20, Pruitt filed an inmate complaint asserting that he was having issues with venlafaxine, and his ingestion of an unidentified medication on April 14 had been a suicide attempt.

On May 3, Dr. Mendenhall saw Pruitt for the first and only time, and apparently had no knowledge about Pruitt or his prescriptions before that date, except to the extent he reviewed the medical file or discussed his prior medical history during that single appointment. (Mendenhall Decl. (dkt. #43) ¶¶10-13.)[3] He also had not been asked to review or respond to any of Pruitt's HSRs before May 3. At the appointment, Pruitt initially stated that he had not been taking venlafaxine for quite some time, but he later stated that he had not taken it for the previous two days. Dr. Mendenhall discontinued Pruitt's prescription for venlafaxine, although he refused any of the other antidepressants that Dr. Mendenhall offered.

---

[3] Pruitt disputes this fact, asserting in his sworn response that "[Dr.] Mendenhall had knowledge or contemporary knowledge that [he] was suffering and struggling with suicidal thoughts and depression and did not help [him] or attempt to discontinue [his] meds, [until May 3, 2018]." (Pl.'s Resp. (dkt. #66) ¶ 18.) However, what Dr. Mendenhall knew about Pruitt's mental health issues and when he knew it is not within Pruitt's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge").

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (alteration adopted and quotation marks omitted) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). During summary judgment, disputed facts are viewed in a light most favorable to the plaintiff as the non-moving party. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017). Defendants seek summary judgment on plaintiff's Eighth Amendment claims.

A.   **Eighth Amendment**

The Eighth Amendment gives prisoners the right to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Defendants do not contest, and the court accepts that plaintiff's suicide attempt was an objectively serious medical condition. *See Lord v. Beahm*, 952 F.3d 902,

7

904 (7th Cir. 2020) ("suicide is an objectively serious medical condition"), instead focusing their arguments on the subjective, deliberate indifference element.

"Deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Deliberate indifference constitutes *more than* negligent acts, or even grossly negligent acts, although it requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The threshold for deliberate indifference is met where, among other situations, "the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. In particular, because the defendants here are medical professionals, the relevant question under the Eighth Amendment is whether their actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Applying this standard, defendants argue that plaintiff cannot prove that they were deliberately indifferent to his suicide risk. The court discusses the evidence with respect to defendant Van-Ward first and will then turn to defendant Mendenhall.

I. **APNP Van-Ward**

Among other things, APNP Van-Ward asserts that she appropriately exercised her clinical judgment in concluding that plaintiff's April 4 HSR was not urgent, specifically because his suicidal thoughts had resolved when she saw his HSR on April 10. Regardless, she asserts that plaintiff could not show that *she* caused his injury because a different nurse

8

and another healthcare provider -- a psychological clinician -- both saw him on April 11 after she said that he would be placed on her schedule. Still, plaintiff responds that APNP Van-Ward acted with deliberate indifference because she delayed medical treatment, which led to his suicide attempt and quit her job before treating him.

Certainly, an "[i]nexplicable delay" that exacerbates a prisoner's medical condition or unnecessarily prolongs suffering can show deliberate indifference. *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (quotation marks omitted). "[E]ven brief, unexplained delays in treatment may constitute deliberate indifference." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (quotation marks omitted). In circumstances where medical care is delayed, the Seventh Circuit has "required that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)); *Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) (a delay in treatment only constitutes deliberate indifference where a plaintiff presents independent evidence that the delay exacerbated an injury).

Although APNP Van-Ward's arguably delayed and casual response to plaintiff's April 4 HSR stating that he was suicidal and her ensuing resignation before seeing him again is concerning, the totality of plaintiff's medical care shows that APNP Van-Ward's late response did not exacerbate his suicidal ideation and certainly was not causal to his later overdose. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (courts examine the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs); *Petties*, 836 F.3d at

730-731. Indeed, there is no dispute that plaintiff was in the care of other intervening providers immediately after submitting his April 4 HSR *and* after APNP Van-Ward responded to his HSR on April 10. First, on April 5, plaintiff reported to a psychological clinician that he was doing "alright" and denied current suicidal ideation. Second, on April 11, he told a different nurse that he did not have thoughts of harming himself, although he was still depressed. Third, and perhaps most importantly, he saw a psychological clinician later that same day, reporting that he was doing ok and was not suicidal. Thus, because he was in the care of other providers, including psychological staff, in the time between his April 4 HSR and his April 14 suicide attempt, and repeatedly stated that he was not having suicidal thoughts, a reasonable jury could not find that APNP Van-Ward's delayed response worsened his condition or caused his later overdose. *Petties*, 836 F.3d at 730-31.

Said another way, while plaintiff may be frustrated with APNP Van-Ward's slow response and her quitting before seeing him, his unsupported argument that her actions upset him (such that she aggravated his depression) and increased his suicidal ideation is insufficient to defeat summary judgment. *See King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) ("conclusory statements not grounded in specific facts are not enough to stave off summary judgment." (citation omitted) (internal quotation marks omitted)). As noted, plaintiff's medical records show that he repeatedly disavowed suicidal thoughts between April 4 and April 11. Even if none of this were true, defendant has at most shown a negligent misjudgment and not a "substantial departure" from accepted professional judgment.

Next, plaintiff asserts that APNP Van-Ward never tried to discontinue his venlafaxine prescription, and that none of the providers he saw between April 10 and 14 had the authority to discontinue the drug.  However, the record evidence shows that he was not taking venlafaxine at that time, as he told a different nurse on April 11 that he had stopped taking venlafaxine once he was placed in observation, and the nurse noted that his medication reaction issue was "essentially resolved."  (Mendenhall Ex. A (dkt #42-1) 10.)  Even if plaintiff was continuing to receive and take venlafaxine, he presumably could have stopped taking it without a prescriber's order, as he had stopped taking his psychiatric medications on his own in September of 2017.  Therefore, no reasonable trier of fact could conclude that APNP Van-Ward acted with deliberate indifference, and the court will grant her motion for summary judgment.

**II. Dr. Mendenhall**

Given his single interaction with Pruitt, the evidence is even less substantial against defendant Mendenhall.  Dr. Mendenhall asserts that he was unaware of a substantial risk of serious harm to plaintiff, as he did not know about his condition before seeing him on May 3.  He further attests to doing what plaintiff requested -- discontinued plaintiff's venlafaxine prescription.  Nevertheless, without any evidence that Dr. Mendenhall ever saw his earlier HSRs, plaintiff claims he ignored them.  In fact, not only is there no evidence that Dr. Mendenhall ever reviewed the HSRs before the May 3 appointment, but there is also no evidence that he was otherwise aware plaintiff was at risk of committing suicide.  Rather, as the undisputed evidence establishes, Dr. Mendenhall saw plaintiff for the first and only time on May 3, and he had no knowledge about plaintiff before that date.  *Forbes*,

11

112 F.3d at 266. Although plaintiff's April 1 and 4 HSRs were routed to a psychiatrist, the evidence shows that these HSRs were routed to a doctor in the psychological services unit and to APNP Van-Ward, respectively, *not* to Dr. Mendenhall.

Plaintiff also asserts that Dr. Mendenhall delayed his attempts to get help, but there is again no evidence that Dr. Mendenhall played *any* role in his treatment before May 3. Moreover, at the May 3rd appointment, the evidence shows that Dr. Mendenhall discontinued plaintiff's venlafaxine prescription as requested and offered to prescribe him different antidepressants, all of which he refused. Therefore, no reasonable trier of fact could conclude that Dr. Mendenhall was deliberately indifferent to plaintiff's suicide risk, and the court will grant his motion for summary judgment as well.

ORDER

IT IS ORDERED that:

1) Van-Ward's motion for summary judgment (dkt. #33) is GRANTED.
2) Mendenhall's motion for summary judgment (dkt. #39) is GRANTED.
3) The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 21st day of December, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge